BEYER ET AL. *v.* BEYER ET AL.

[No. 18,203. Filed June 5, 1952. Rehearing denied August 1, 1952. Transfer denied October 7, 1952.]

*George N. Bowser,* of Warsaw, and *George F. Stevens,* of Plymouth, for appellants.

*Donald Vanderveer;* and *Widaman & Widaman,* all of Warsaw, for appellees.

ROYSE, P. J.—This litigation arose out of a family dispute as to the ownership of certain real estate in Kosciusko County, Indiana. In order to properly understand the question presented to us it is necessary that we summarize the facts as disclosed by the record.

For many years prior to April, 1931, John F. Beyer and his wife lived in Kosciusko County. (Hereinafter they will be designated as father and mother.) They owned approximately two thousand acres of farm land in that county. They also owned a large amount of city property in the city of Warsaw. Some of this property was owned by them as tenants by the entirety; some was owned by each individually. On said last mentioned date they had three children, Mae E. Beyer, a daughter who never married and lived in the home of her parents. She died intestate June 15, 1940. Carl F. Beyer, who was married to appellee Mabel C. Beyer (hereinafter unless otherwise indicated the term appellee will refer to her), lived in Warsaw most of his life. He had no children and died testate February 23, 1943. The third child was the appellant Harold R. Beyer (hereinafter, unless otherwise indicated, the term appellant will apply to him). He was married to appellant Zelpha G. Beyer. They had four children. For several years prior to 1938 they lived in Goodells, Mich. John F. Beyer died intestate August 9, 1936, leaving surviving him his widow and three children. Anna M. Beyer died testate February 15, 1947.

On April 9, 1931 the father and mother executed to Carl F. Beyer, Trustee, a deed conveying a large part of the real estate owned by them and each of them, which deed was duly recorded. This deed contained the following provision:

"The grantee, Trustee, has full power to sell, lease, convey, vacate or plat lots and encumber by mortgage all, or any, part of said premises, and the purchaser is under no obligation to inquire as to application of proceeds, the beneficiaries looking solely to the Trustee in relation thereto."

Concurrently with the execution of this deed, the said Carl F. Beyer executed a written declaration of trust setting out the terms and conditions of the trust, which declaration was approved in writing by the father and mother. This instrument was duly recorded. The pertinent portions of this instrument are as follows:

"Now therefore, I, Carl F. Beyer, hereby declare that said conveyance was not made to me for my own purpose and as my own property, but solely as trustee under the terms and conditions following:

"1st. I am to take the exclusive possession and control of said property, lease the same, sell and convey the same, exchange the same for other property, plat or re-plat portions thereof, and in general to manage said property in a way to produce the most income that can reasonably be had, either by the management of the property as it now exists, or in such condition as it may subsequently be put by sale, exchange or otherwise.

"2nd. In the management of said property said grantors are to be consulted by me as often as it is convenient so to do, but I am not to be controlled by such advise.

"3rd. Out of the income from said property I am to pay carrying charge including the expense of farming or caring for said property, insuring the same, paying taxes on the same, and making such repairs as may be necessary, and the net income arising from the management of said property by me shall be paid to said Anna M. Beyer as long as she shall live; the income to be paid at such frequent intervals as there shall be surplus income in my hands, amounting to $5,000.00.

"If the death of said Anna M. Beyer shall precede that of said John F. Beyer, then upon the death of said Anna M. Beyer, the said net income shall, in like manner, be paid by me over to said John F. Beyer, said John F. Beyer shall have no title or ownership in the proceeds arising from the operation of said property, shall have no right to assign the same or encumber the same, the title thereto going to him only upon its being paid to him in cash or its equi*ovel*ent.

"Upon the death of both said grantors, said trust shall continue for a period of ten years, unless sooner settled by an agreement of all the parties interested therein at the time of such settlement.

"During the period that said trust shall exist after the death of both of said grantors, the net income that was theretofore payable to them, or either of them, shall be paid by me in equal proportions to Mae E. Beyer, Harold R. Beyer and myself.

"If the said Mae E. Beyer shall die before the expiration of said trust, then the portion of said income payable to her during her lifetime shall be divided equally between Harold R. Beyer and myself; or, if Harold R. Beyer shall die before the expiration of said trust, his share of such income shall be paid to his wife and children, share and share alike; or, if said children be then under the age of 21 years, the entire sum shall be paid to their mother, so long as she maintains her children out of said income.

"If I should die, pending said trust, the portion of said income which should have been paid to me, if I were still alive, shall be paid to my wife, so long as she lives, and upon her death, shall be divided equally between said Mae E. Beyer and said Harold R. Beyer, or his wife and children, as above stipulated, unless my said wife shall by will or other written appointment, direct that said income after her death shall be paid to some other person or persons as long as said trust exists.

"At the expiration of said trust, under the terms hereof, all of said property shall be by me conveyed to said Mae E. Beyer, Harold R. Beyer and

myself, in equal proportions, or if the said Mae E. Beyer shall then be dead, shall be conveyed to myself and said Harold R. Beyer; or if I be dead, my proportion shall be conveyed to my wife, and if said Harold R. Beyer shall be dead, the same shall be conveyed one-third to his wife, and two-thirds to his children, share and share alike.

"If I shall die prior to the expiration of said trust, my successor shall be appointed by the Judge of the Kosciusko Circuit Court, upon the application of the persons then surviving who are entitled to participate in said trust, or if they cannot agree, then Judge of said court shall appoint some competent person or corporation or act in my stead, who shall be clothed with all the duties and powers and liabilities that I am charged herewith hereunder, during my life.

"In the execution of said trust, I am only to use reasonable judgement and care, and I am not to be chargeable with errors in judgment in the management of said property, or the default of such persons as I may employ to carry out the purposes of the trust, it being only the intent that I shall be chargeable with such money and property as I may receive, and a proper accounting for the expenditure thereof, it being understood that I shall at least annually render to the persons entitled to receive the income from said property, a statement of such receipts and expenditures; and for the service rendered as such trustee, I am to have such reasonable compensation as may be agreed upon by the persons who are entitled to receive the net income from said property, who shall, at that time, be over the age of 21 years; or, in the event of the failure of those interested to agree, may be determined by the Judge of the Kosciusko Circuit Court, upon the application of any of the parties in interest.

"It is understood that the grantors are not to be charged with any rent on account of the occupancy of any of the property in the trust that they desire to occupy for their own purposes."

(Hereinafter, this trust will be referred to as the 1931 Trust.)

The real estate involved in this litigation was not a part of the property conveyed by the aforementioned deed to Carl F. Beyer, Trustee. This action involves property known as the Home Farm and the Four Lots. The Home Farm, consisting of approximately fifty acres, was owned by Anna M. Beyer. She, her husband and daughter lived on it.

On February 12, 1932 Anna M. Beyer and her husband conveyed by deed to the appellants as tenants by the entirety the real estate known as the Home Farm for a stated consideration of $3000.00.

On February 7, 1935 the appellants conveyed by deed this property to Mae E. Beyer for a stated consideration of $3000.00.

On April 13, 1935 the said Mae E. Beyer conveyed this property to appellants for a stated consideration of $1.00. This deed contained the following provision:

"The grantor, Mae E. Beyer, reserves a life interest in the above conveyed properties for herself and also for her father, John F. Beyer and her mother, Anna M. Beyer, which ever shall survive."

On February 11, 1936 the appellants as tenants by the entireties, by quit claim deed, conveyed this property to Carl F. Beyer, Trustee. This deed excepted a portion of said property which had been previously sold by appellants. It contained the following provision:

"The grantee, trustee,. has full power to lease, sell, convey, vacate or plat lots and encumber by mortgage all or any part of said premises, and the purchaser is under no obligations to inquire as to the application of the proceeds, the beneficiaries looking solely to the Trustee in relation thereto."

On December 8, 1937 Anna M. Beyer, a widow, and Mae E. Beyer, by quit claim deed, conveyed their life estate in this property to Carl F. Beyer, Trustee.

For many years prior to April 30, 1935 John F. Beyer, as Trustee for Anna M. Beyer and Mae E. Beyer, owned the Four Lots involved herein. On said last mentioned date the said John F. Beyer, as Trustee for Anna M. Beyer and her husband John F. Beyer, and Mae E. Beyer, conveyed said Four Lots to Carl F. Beyer, Trustee. This deed also contained the same provision as to power of sale, etc. of the Trustee. A written memo stated John F. Beyer gave up Trusteeship on account of illness and Carl F. Beyer assumes this Trusteeship.

It is perfectly obvious that the primary objective of the 1931 Trust was to provide for the care and maintenance first of the mother and then the father, and at their deaths it was to be shared equally by their children. It appears from the record that this Trust was administered by Carl F. Beyer from the time it was created until his death in February, 1943. The proceeds from the Home Farm and the Four Lots were handled by the Trustee of this Trust.

As heretofore indicated the appellants, for some time prior to the creation of the trust, lived in Michigan until about June, 1938, when they moved to Warsaw, where they lived until 1940 when they moved to the Home Farm, where they have lived continuously thereafter. Appellant was employed by Carl F. Beyer to assist in managing the farm and real estate. Amicable relations existed among all of the parties until some time prior to August 15, 1942. It appears that appellant, in his work for the trustee, found evidence that said trustee had applied proceeds of the trust to his personal account and use. On said last mentioned date the appellants and the mother brought an action against Carl F. Beyer, Trustee, and the beneficiaries of the Trust for an accounting, the termination of the Trust

and Trusteeship, the appointment of a receiver to take charge of and control the trust property, the removal of the Trustee, and for judgment against him for any amount found due from him on the accounting prayed for. That action pended in the Kosciusko Circuit Court until May, 1947. During the interim Anna Beyer and Carl F. Beyer died. Appellant was substituted for Anna Beyer and appellee was substituted for Carl Beyer. On the death of Carl Beyer, Henry Butler was appointed by the court as Trustee of the 1931 Trust. The complaint and judgment in that case did not refer to the real estate which is the subject of that action. It is conceded by the parties the judgment in that case did not fix and adjudicate the rights of appellee to the property in question here.

On March 9, 1949 appellants brought this action to quiet their title to the Home Farm and Four Lots. Appellee answered asserting she was the owner of an undivided one-half interest in said property. On proper request the trial court made a special finding of facts and stated its conclusion of law in favor of appellee. Judgment accordingly. The errors assigned here are that the trial court erred in each of its conclusions of law and in overruling appellants' motion for a new trial.

We proceed to consider the contentions of the parties as to each of the properties separately. Appellants contend that by their quit claim deed of February 11, 1936 this property did not become a part of the 1931 Trust and they did not lose their interest in the Home Farm. They further contend that by this deed Carl F. Beyer did not individually, nor through him upon his death did his widow, the appellee, gain any interest in this real estate. In support of their contention appellants assert the provisions of this deed clearly express

the intention of the appellants to separate the legal and equitable estates in the remainder in fee simple in the Home Farm. Appellee contends the aforementioned deed of appellants established an express trust which made the Home Farm a part of the Trust created by the father and mother in 1931.

Did the deed of appellants of the Home Farm property create an express trust whereby that property became a part of the 1931 Trust?

Section 56-601, Burns' 1951 Replacement, provides as follows:

> "No trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

This provision refers only to the owner of the real estate or his attorney. *Koehler et al.* v. *Koehler et al.* (1921), 75 Ind. App. 510, 121 N. E. 450 (Transfer denied).

In construing this provision of the statute, this court, in the case of *Christian* v. *Highlands, Administrator* (1903), 32 Ind. App. 104, 109, 69 N. E. 266, said:

> "It is not enough for the deed of conveyance by which it is proposed to create a trust that it shall merely indicate an intention of the parties thereto to create some sort of trust. The trust must be expressed in the instrument, or by a reference therein to some other writing, so that the court which is called upon to enforce it as an express trust may ascertain, without resort to parol evidence, the character of the trust. To this end a beneficiary should be named or indicated. In the deed here shown no purpose of the trust is stated. There is no provision requiring the trustee to hold the property for any designated use or purpose, or for any designated person. It cannot be ascer-

tained from the writing that the trustee was to devote the land or its proceeds to any particular purpose, and to hold and recover the remainder thereof not so used to the grantors, or any of them. It may be claimed, plausibly, that there is indication in the writing that the grantee was not to hold absolutely for his own benefit alone, for in such case the words 'in trust' would be wholly superfluous; yet there can not be said to have been more than the ineffectual expression of a desire to create a trust, inasmuch as the writing by which an express trust is created must contain a proper and sufficient declaration of the trust, and not stop short with the designation of a trustee."

In the case of *Lassiter et al* v. *Goldblatt Bros. Inc., et al.* (1942), 220 Ind. 215, 41 N. E. 2d 803, in a warranty deed from Jacob Rimbach, Incorporated, the grantees were designated as "Jacob Rimbach, Trustees." Appellants, in support of their contention that the deed conveyed the real estate to them as individuals, asserted that from extraneous evidence the "Trustees" may be identified as the four daughters of Jacob Rimbach, deceased, who were then acting as trustees under a testamentary trust created by him and after his death amended by them with the consent of the court having jurisdiction of the trust. Appellees agreed with this contention. However, appellants went further and contended:

"The only uncertainty in the deed, absolute on its face, is in the description of the grantees. Their identity may be shown by parol testimony. But 'no trust concerning lands . . . shall be created, unless in writing, . . .' §56-601, Burns' 1933, §14734, Baldwin's 1934. There is no such writing in the deed and therefore no trust. '. . . if a deed cannot take effect in the precise way intended, yet if it can operate in another mode it will be so construed.' . . . 'It will be assumed that the parties did not intend that it should be a nullity.' Therefore, it will be made effective by permitting the

four trustees to take individually as tenants in common."

The Supreme Court, after reference to the basic rule for the construction of written instruments as stated in 16 Am. Jur., Deeds, §168, p. 531, in rejecting the last contention said:

"Without the aid of extrinsic evidence we have no difficulty in finding that the intent of the grantor was to convey to trustees and that there was no intent to convey to individuals. We know of no artificial or statutory rule that requires us to insert in the deed the names of grantees who were *never intended to receive the property.* If the trustees may not hold it is better to treat the attempted conveyance as futile than for us to make a new and different deed from that intended. In some such cases it has been said that a trust results in favor of the grantor. See 1 Scott on Trusts (1939), §45.4, p. 270, and *Sanford* v. *Van Pelt* (1926), 314 Mo. 175, 282 S. W. 1022, where the authorities are reviewed." (Our emphasis.)

In this case it seems clear to us from the terms of the deed in question that appellants conveyed this property in trust to Carl F. Beyer. Appellee concedes the deed did not convey it to her husband individually. However, there is nothing in the deed, nor is there any reference to some other writing which describes either the purpose of the trust or names or indicates who are to be the beneficiaries of the trust. In the record herein there is no writing referred to which in any manner indicates it was the intent of appellants that this real estate should become a part of the 1931 Trust. There is no finding among the special findings of fact by the trial court that they had such intent. There is no evidence that such was their intent. The most reasonable inferences from the record is that they had no such intention. No reason

is shown why they should divest themselves of their title to land and leave to themselves a lesser interest than they owned. We are of the opinion this deed did not create an express trust in this property by which it became a part of the 1931 Trust.

The same reasoning and rule applies to the quit claim deed of the mother and Mae Beyer of their life interest in this property.

The next question for our consideration is: Did the deed in question establish a resulting trust in this property in favor of appellants?

In Vol. 3, Scott on Trusts, §404, p. 2161, in speaking on "Where a resulting trust arises," the author states:

"The modern law of resulting trusts has its origin in the early doctrines of the English Court of Chancery as to uses. As we have seen, conveyances of land to the use of the transferor or of a third person became common by the end of the fourteenth century, although they were not enforced by the chancellor until the fifteenth century. Not long after the chancellor began to enforce uses expressly declared, he was faced with the problem of giving relief where uses were not expressly declared, or, if declared, did not include the entire beneficial interest. Thus if A, having an estate in fee simple, enfeoffed B and his heirs to the use of C for life, without further declaring the use, the question arose as to who was entitled to the use after C's death. The chancellor took the view that since there was nothing to indicate that B should have the use in himself, the inference was that A was entitled to it; in other words, B held the land to the use of C for life and upon C's death he held it upon a resulting use for A. The chancellor went further than this, however. Where A, having an estate in fee simple, enfeoffed B and his heirs without declaring any use, either in A or in B or in any third person, he held that the inference was that if no consideration was given for the feoffment, B was intended to hold to the use of A; in other words, it was held that where land

was gratuitously transferred, and there was no declaration of uses, the transferee held the land upon a resulting use for the transferor."

In the case of *Sanford* v. *Van Pelt* (1926), 314 Mo. 175, 282 S. W. 1022, the facts are somewhat analogous to those in this case. In that case the deed was made to T. B. Holland, Trustee. The name of the beneficiary and the limitations of the trust were not expressed in the deed or in any other writing. In that case the deed apparently did not, as it does in this case, make any reference to beneficiaries of the trust. The Trustee subsequently died and his heirs claimed the property under the residuary clause of his will. They claimed the word "Trustee" was merely descriptio personae and that T. B. Holland took absolute title to the property. As heretofore indicated, appellees here make no such contention. Appellants in that case contended that while the fact or existence of the Trust is sufficiently proved or evidenced by the written deed in question, if there is no competent evidence, written or parol, showing either the terms of the trust or the intended beneficiary thereof, then the trust fails for indefiniteness and uncertainty, and a Resulting Trust arises by operation of law in favor of the grantor or donor of the trust.

In a well reasoned opinion which quoted 3 Pomeroy on Equity Jurisprudence, 1 Perry on Trusts and Trustees (6th edition), 26 R. C. L. 1216, and cases from a number of states, the Missouri Court sustained the foregoing contention of appellants. That case was cited with approval in the case of *Lassiter et al.* v. *Goldblatt Bros. Inc., et al., supra,* at page 218.

We are in accord with the reasoning of the foregoing authorities. We believe they are based on sound prin-

ciples of honesty, equity and justice. Therefore, we hold the deed of appellants to the Home Farm created a Resulting Trust in their favor.

We next consider the Four Lots. Appellant contends that the deed as to this property shows the creation of an express trust in favor of Anna M. Beyer and Mae E. Beyer. Appellee again asserts it became a part of the 1931 Trust.

The record discloses these lots were conveyed to John F. Beyer, Trustee, for a stated consideration of $2630.00 on February 8, 1916. That deed did not name the beneficiaries or state the limitation of the Trust. However, on April 26, 1935, J. F. Beyer prepared in his own handwriting a written memo which was introduced in evidence in this case. This memo was as follows:

"Warsaw, Ind. April 26/35
"Trustee Deed —— —— of Lots
341-4 Lots in 7th Addition. Make out Deed for about 4 lots to Carl F. Beyer, Trustee. Consideration One Dollar. Trustee assumes all taxes thereon.

"Explanation:—How was J.F.B. Trustee for the women folks A. M. Beyer and M. E. Beyer. Give up Trusteeship on a/c of illness, not able to attend to same any more. Carl F. Beyer assumes this Trusteeship."

On April 30, 1935 J. F. Beyer, Trustee for Anna M. Beyer and John F. Beyer, her husband, and Mae Beyer, unmarried, conveyed these lots to Carl F. Beyer, Trustee.

By the foregoing instruments the father acknowledged he held title to these lots in trust for the mother and Mae Beyer. His deed as such Trustee to Carl F. Beyer, Trustee, created an express trust in favor of them, which was entirely separate and distinct from the 1931 Trust.

For the reasons herein stated, the trial court erred in its conclusions of law and its judgment is reversed.

Because of the conclusion we have reached, there is no reason for a new trial. Therefore, the Kosciusko Circuit Court is directed to re-state its conclusions of law in accord with this opinion and enter judgment accordingly.

BOWEN, J.—Not participating.

NOTE.—Reported in 106 N. E. 2d 247.